IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN ELLIS and TIMOTHY PRICE, and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>DHL EXPRESS (USA) and DEUTSCHE POST WORLD NET,<br><br>　　　　　Defendants. | Case No. 08 C 6541 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Ellis and Timothy Price, on behalf of a putative class, have sued DHL Express and Deustche Post World Net, alleging a violation of the Worker Adjustment and Retraining Notification Act (WARN Act), 39 U.S.C. § 2102(a), in connection with layoffs at DHL's facilities in the Chicago area. DHL has moved for summary judgment. For the following reasons, the Court grants DHL's motion.

### Facts

Because DHL has moved for summary judgment, the Court views the facts in the light most favorable to the plaintiffs and draws reasonable inferences in their favor. *See, e.g.*, *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

John Ellis and Timothy Price were employed full-time as drivers for DHL in the

1

Chicago area. On November 7, 2008, Ellis received a letter from DHL stating that he was on layoff status. On the same day, DHL informed Price that he was to be laid off on December 1, 2008.

On November 10, 2008, Deutsche Post World Net, DHL's parent company, announced that it would be discontinuing its domestic air and ground services in the United States. Plaintiffs allege that DHL began laying off workers at five of its six Chicago-area facilities[1] as early as August 2008. At that point, DHL had 950 full-time employees. Plaintiffs contend that DHL laid off at least forty-seven full-time employees in August; fifty-two full-time employees in September; eighty full-time employees in October; and thirty-six full-time employees in November. In addition to its regular full-time employees, DHL employed "casual drivers." Plaintiffs contend that at least fifty casual drivers were involuntarily laid off between August and December 2008.

In December 2008, after negotiations with representatives of Teamsters Local Union 705 and Teamsters Local Union 701, DHL offered some of its remaining union employees participation in a "voluntary separation program." Participating employees could resign and waive any rights to be recalled to work in exchange for several weeks of pay. One group of employees was offered ten weeks of severance pay, and another was offered four weeks. Participants also had to waive their right to WARN Act notices in exchange for the severance pay. The collective bargaining agreement then in effect did not provide for any kind of severance pay in the event of an involuntary termination.

---

[1]The addresses of the five facilities that were closed are as follows: 929 West Cermak Road, Chicago, Illinois; 4500 Western Avenue, Lisle, Illinois; 1420 West Dundee Road, Arlington Heights, Illinois; 5440 West 122nd Street, Alsip, Illinois; and 13950 West Business Center Drive, Lake Forest, Illinois.

2

## Discussion

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine whether a genuine issue of material fact exists, the Court must view the record in the light most favorable to the nonmoving party and draw reasonable inferences in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The WARN Act requires an employer to give sixty days notice of a mass layoff or a plant closing to those employees who will suffer an employment loss as a result of the action. 29 U.S.C. § 2102(a). The Act also provides as follows:

> (2) the term "plant closing" means the permanent or temporary shutdown of a single site of employment . . . if the shutdown results in an employment loss at the single site of employment during any thirty-day period for fifty or more [full time] employees.
>
> (3) the term "mass layoff" means a reduction in force which—
>     (a) is not the result of a plant closing; and
>     (b) results in an employment loss at the single site of employment during any thirty-day period for
>         (i)(I) at least thirty-three percent of the employees (excluding any part-time employees); and
>         (II) at least fifty employees (excluding any part-time employees); or
>         (ii) at least 500 employees (excluding any part-time employees);
>
> . . .
>
> (6) subject to subsection (b) of this section, the term "employment loss" means (A) an employment termination, other than a discharge for cause, voluntary

> departure, or retirement, (B) a layoff exceeding six months, or (C) a reduction in hours of work of more than fifty percent during each month of any six-month period.

*Id.* § 2101(a).

## A.  Plant closing

An employer can incur liability under the WARN Act if it fails to give notice of a plant closing to its affected employees at least sixty days before the closing takes place. *Id.* §§ 2101(a)(2) & 2102(a).

As an initial matter, DHL contends that plaintiffs have failed to adequately allege a plant closing claim in their complaint. Plaintiffs sought leave to amend their complaint after the present motion was fully briefed but within the time frame specified by the Court in the pretrial schedule entered pursuant to Federal Rule of Civil Procedure Rule 16(b)(3) and 16(d). Plaintiffs argued the plant closing claim in their response, and DHL addressed it in reply. Plaintiffs have moved to strike this portion of DHL's reply because it included arguments about the plant closing claim that were not in DHL's opening brief. The reason for this, however, was that plaintiffs' complaint did not put DHL on notice of a claim made on that basis. Because plaintiffs first argued the plant closing claim in their response to DHL's summary judgment motion, the Court declines to strike the pertinent parts of DHL's reply.

Plaintiffs have also asked to conduct more discovery on their newly amended plant closing claim. They have not articulated, however, how any new discovery will enable them to respond to DHL's motion. *See* Fed. R. Civ. P. 56(f). Nevertheless, even if all of plaintiffs' allegations are true, DHL is still entitled to summary judgment.

4

Thus, the Court concludes that further discovery is unnecessary and proceeds to consider the plant closing claim on its merits.[2]

Plaintiffs contend that all six Chicago-area DHL facilities constitute a "single site of employment" for purposes of the WARN Act. If so, DHL would be subject to liability under the Act because it is undisputed that at least fifty full-time employees suffered an employment loss during a thirty-day period if the losses from all five of the closed sites are aggregated. Although plaintiffs assert that DHL has admitted that the five facilities should be counted as a single site, DHL contends that it assumed aggregation of the five sites only for purposes of the separate mass layoff claim. DHL argues that the five facilities cannot be counted a single site for purposes of a plant closing claim.

Both parties cite the Department of Labor's regulations without any discussion of whether they are entitled to deference. Because Congress has delegated broad authority to the Secretary of Labor to administer the WARN Act and to promulgate regulations under the Act, *see* 29 U.S.C. § 2107(a), the Court must afford deference to the Department's interpretations under *Chevron, U.S.A., Inc. v. Nat'l Resources Defense Council*, 467 U.S. 837 (1984). These regulations, therefore, are entitled to "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844. *See also Meson v. GATX Tech. Servs. Corp.*, 507 F.3d 803, 808-09 (4th Cir. 2007) (deferring to the Department of Labor's regulations and commentary

---

[2]DHL also argues that it is entitled to summary judgment because neither of the plaintiffs had suffered an employment loss at the time they filed their complaint because neither had been laid off for more than six months at that time. 29 U.S.C. § 2102(b)(6). Plaintiffs allege in their amended complaint that they have been laid off from DHL for over six months.

on the interpretation of "single site of employment").

The Department of Labor has defined a "single site of employment" as "either a single location or a group of contiguous locations. Groups of structures which form a campus or industrial park, or separate facilities across the street from each other may be considered a single site of employment." 20 C.F.R. § 639.3(i)(1). Even if not immediately contiguous, separate facilities may be considered a single site of employment "if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment." *Id.* § 639.3(i)(3). That exception, however, was "intended to be read narrowly to cover those rare situations in which two separate buildings share staff, equipment and functions." 54 Fed. Reg. 16049 (Apr. 20, 1989). The exception does not cover "separate sites which occasionally share staff or are supplied from a common source." *Id.*

It is undisputed that the six facilities were located several miles apart from each other, in five different municipalities. This fact negates the factor of geographic proximity—the key factor in the analysis according to the Department of Labor. 20 C.F.R. § 639.3(i)(3). *See also, United Paperworkers Local 340 v. Specialty Paperboard, Inc.*, 999 F.2d 51, 56 (2d Cir. 1993) ("Geographically separate operations are not to be combined when determining whether the employment threshold for triggering the notice requirement is met.").

Plaintiffs allege that DHL "workers were members of Teamsters Local Union 705 and were subject to be employed at any of the stations in the Chicagoland area. The stations had the same operational purpose of the delivery/pick up of packages for the Chicago area to be shipped domestically and internationally." First Am. Compl. at ¶ 63.

Although plaintiffs allege that employees were assigned to a particular station based on seniority and preference, they do not contend that employees were regularly shared or transferred between any two locations. *See* 20 C.F.R. § 639.3(i)(3). As a result, even if plaintiffs' allegations about the way employees were assigned to specific facilities are true, they do not establish a genuine issue of material fact regarding whether the six facilities were a single site of employment. *See Rifkin v. McDonnell Douglas Corp.*, 78 F.3d 1277, 1281 (8th Cir. 1996) (occasional transfer of staff between two sites that produced the same product was insufficient to support a finding that the two constituted a single site).

Plaintiffs have not argued in their response to DHL's motion that the employment losses at any single facility amount to a plant closing. In their first amended complaint, however, plaintiffs allege that "[i]n the ninety days before Ellis's layoff (November 7, 2008) and ninety days following Ellis's layoff, DHL EXPRESS closed five locations which each lost in excess of fifty persons." First Am. Compl. ¶ 67. This allegation does not establish that a plant closing occurred at any of the five closed facilities. Plaintiffs have not alleged that the persons "lost" were full-time employees, that they suffered an employment loss as defined by the statute, or that any fifty employment losses occurred during a singe thirty day period. *See* 29 U.S.C. § 2101(a). Thus, even taking plaintiffs' allegations as true, they have not shown that there is a genuine issue of material fact. No reasonable jury could find that any of the five facilities was subject to a plant closing within the meaning of the WARN Act.

**B.     Mass layoff**

Plaintiffs argue that DHL's restructuring of operations beginning in August 2008 constituted a mass layoff, triggering the WARN Act's notice requirements. Plaintiffs contend that fifty so-called casual drivers should be counted as employment losses. Although the precise number of casual drivers is unknown,[3] plaintiffs contend that fifty should be counted. Adding the fifty casual drivers to the 215 regular employees who, plaintiffs contend, suffered employment losses between August and November 2008, plaintiffs contend that 265 full time employees experienced an employment loss during that time. That figure, represents thirty-four percent of the 733 employees listed on the October 2008 Full Time Driver Seniority Roster.

Even assuming that fifty casual drivers were full time employees who suffered employment losses, the total number of employment losses falls short of the thirty-three percent of employees required to trigger the notice requirement. The WARN Act allows aggregation of employment losses over a thirty or ninety-day period to determine whether a mass layoff has occurred. If the number of employment losses over a thirty or ninety-day period equals or exceeds thirty-three percent of the total number of persons employed full-time on the date notice must be given (sixty days before the first termination), the WARN Act is violated. "The point in time at which the number of employees is to be measured for purpose of determining coverage [under the WARN

---

[3]Affidavits offered by plaintiffs are the only evidence supporting the contention that there were fifty casual drivers employed by DHL. None of the affiants could name casual drivers other than those who also completed affidavits for plaintiffs. Similarly, none could offer specific numbers of casual drivers. Most estimated the number at fifty. One affiant estimated that there were ninety casual drivers.

Act] is the date the first notice is required to be given." 20 C.F.R. § 639.5(a)(2). This means that the proper figure for total full-time employees is not the total in October 2008, but rather the total at the start of June 2008, sixty days before August 2008, the date that plaintiffs contend the first of the employment losses began. *Id.* DHL contends that it employed at least 950 full-time employees and has produced records that support that figure. Def. Ex. 9. Plaintiffs have failed to produce any evidence to rebut DHL's contention in this regard. Thus, even accepting plaintiffs' figure of 265 employment losses, it amounts to just under twenty-eight percent of the 950 persons employed full-time in May 2008. This falls below the minimum required to trigger the WARN Act's notice requirements.

**C.     December resignations**

Plaintiffs contend that there are genuine issues of fact precluding summary judgment on whether 315 full-time employees who resigned in December 2008 should be counted as employment losses because DHL obtained the resignations under the threat that the employees would receive no pay or benefits if they refused. DHL contends that these resignations were voluntary departures and, therefore, cannot be counted as employment losses under the WARN Act.

The WARN Act exempts "voluntary departure[s]" from its definition of employment loss. 29 U.S.C. § 2101(a)(6). The Department of Labor's position is that resignations or early retirements taken in exchange for employer incentives should not count as employment losses as long, so long they were voluntary. 54 Fed. Reg. 16048 (Apr. 20, 1989). The Department has recognized the concept of constructive discharge, "under which a worker's resignation or retirement may be found not to be

voluntary if the employer has created a hostile or intolerable work environment or has applied other forms of pressure or coercion which forced the employee to quit or resign." *Id.* So long as they do not amount to constructive discharges, "incentive programs, including incentive retirement programs and voluntary layoffs, . . . are voluntary departures for purposes of WARN." *Id.*

Because the Department of Labor's interpretation of "voluntary departure" is a reasonable one, the Court defers to that interpretation, as other courts have done. *See Rifkin*, 78 F.3d at 1283 (employees opting for early retirement did not suffer employment loss); *Castro v. Chicago Housing Authority*, No. 99 C 6910, 2003 WL 21518321, at *11 (N.D. Ill. July 1, 2003) (employee who resigned after receiving a notice of layoff did not suffer employment loss). Plaintiffs have failed to cite authority to support the proposition that a resignation made in the face of imminent layoffs is involuntary in the circumstances present in this case.

Plaintiffs contend that DHL coerced these employees into resigning by threatening them with termination without any severance pay if they did not resign and by allowing the employees only two days to consider the offer. According to plaintiffs, the employees agreed to resign under economic duress.

"[D]uress is not shown by the fact that one was subjected to a difficult bargaining position or the pressure of financial circumstances." *Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309, 313 (7th Cir. 1992) (citations omitted). In addition, the "pressure applied must have been wrongful or unlawful; mere hard bargaining is not enough." *Id.* at 314. In some cases, however, "the threat of discharge from one's

employment may constitute duress which would make voidable a contract executed while a party was under such a threat." *Meyers v. TruGreen, Inc.*, No. 03 C 7570, 2004 WL 1146120, at *6 (N.D. Ill. May 21, 2004) (genuine issues of material fact precluded summary judgment where plaintiff averred that supervisor told her that if she did not resign and sign a release of sexual harassment claims she would be terminated, and defendant testified that no such conversation took place).

Taking the evidence in the light most favorable to plaintiffs, there is nothing from which a jury reasonably could find that DHL created a "hostile or intolerable" work environment that forced these employees to quit. 54 Fed. Reg. 16048 (Apr. 20, 1989). The evidence presented by both DHL and plaintiffs reflects that DHL offered four-week and, in some cases, ten-week severance packages in exchange for resignations to the 325 most senior employees who bid on the packages. Although asked to sign within two days of receiving the offer, employees were allowed one week after signing to revoke the release. Several employees did just that. Furthermore, the release clearly referenced the WARN Act and advised employees to consult an attorney. Although DHL's announcement of its intention to discontinue parts of its shipping business no doubt caused great distress among the company's employees, no reasonable jury could find that the circumstances rose to the level of coercion.

Plaintiffs contend that these employees were presented with the impossible choice of resignation or termination. Although it is true that the employees faced the possibility of termination due to DHL's reductions, there is no indication that they were threatened with immediate termination if they did not agree to the resignations. On the contrary, the evidence demonstrates that the resignation packages were offered as

11

options upon which union employees were permitted to bid. Plaintiffs have produced no evidence from which a reasonable finding could be made the pressure exerted by DHL was unlawful. Rather, the evidence demonstrates that the resignation option was the result of negotiations with the union and DHL's decision to "gamble" on whether enough employees would resign so as not to trigger the WARN Act's notice provisions. *See* 54 Fed. Reg. 16045 (Apr. 20, 1989) (employer may gamble that a certain number of employees will accept incentive retirement or resignation programs but risks incurring WARN liability if an insufficient number of employees accept). Indeed, under plaintiffs' theory, any offer of a retirement or resignation incentive program as an alternative to a layoff would constitute improper duress. That result would be at odds with the Department of Labor's position and with common sense.

Finally, plaintiffs contend that the offer of four weeks pay in exchange for the resignations was insufficient because it was only one-half of what the employees would have been entitled to under the WARN Act. The statute, however, does not require an employer to offer compensation equal to the potential damages for a WARN Act violation when offering resignation incentives.

## Conclusion

For these reasons, the Court grants plaintiffs motion to amend the complaint [no. 83] but denies plaintiffs' motion to strike or in the alternative for additional discovery [docket no. 86]. The Court grants DHL's motion for summary judgment [no. 41]. Deutsche Post's pending motion to dismiss for lack of personal jurisdiction [no. 74] is terminated as moot, because the basis upon which the Court granted has summary judgment for DHL also applies to Deustche Post. The Court also terminates as moot

12

plaintiffs' motion for class certification [no. 71], which plaintiffs filed after DHL moved for summary judgment. The Clerk is directed to enter judgment in favor of the defendants.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 21, 2009